No. 5996.

GEORGE F. ALFORD v. WALTER H. JONES.

1. REGISTRATION.—Registration of a deed must be in that county designated by the Legislature for the record of deeds for the land affected by such deed.

2. UNORGANIZED COUNTY—REGISTRATION.—The Registration of deeds for lands in unorganized counties is determined by the statutes prescribing the place of such record.

3. ARCHER COUNTY—CLAY COUNTY.—In August, 1875, the county of Archer was not attached to Clay county, and registration of deeds for land in Archer county in the records of Clay county was of no legal effect as notice, although by common consent such registration was made.

APPEAL from Archer.     Tried below before the Hon. B. F. Williams.

The facts are given in the opinion.

*L. W. Hart* and *Barrett & Stine* for appellant: The court erred in rendering judgment for defendant because plaintiff showed good title to the land from a common source, and because the defendant's deed had not been duly recorded in the proper county, and plaintiff had no notice of said defendant's deed, either actual or constructive, and had paid a valuable consideration for said land. Paschal's Digest, art. 4988; Laws 1866, page 94, sec. 1; Laws 1870, page 21, sec. 12; also page 53, sec. 13; Laws 1874, page 162, sec. 2, and page 7, section 1; Paschal's Digest, art. 4577; Laws 1879, page 150; Lumpkin v. Muncey, 66 Texas, 311; Holden v. The State, 1 Court of Appeals, 225.

*Hunter & Stewart,* for appellee.

HOBBY, JUDGE. The decisive question in this case is one of notice, and depends upon the proper registration of the defendant's deed. Both plaintiff and defendant, in the court below, claim title to the land, which is situated in Archer county, from W. F. Cummings as the common source. The deed to plaintiff—appellant—who was a purchaser for a valuable consideration, from Cummings, was dated March 21, 1877. That of the defendant—appellee—was dated November 21, 1874, and recorded on August 2, 1875, on the records of Archer county, at that time kept in Clay county, and re-recorded in Archer county May 10, 1883.

It appears from the evidence that "it was universally conceded that Clay was the proper place to keep the records of Archer county at that time, and that the records of Archer and other unorganized counties were kept in Clay county from 1873 to 1878. The clerk of the district and county courts of Clay testified that "his recollection was that the clerk of Mon-

tague county would not record a deed to land in Archer county, and had forwarded several to him to record."

If the registration of appellee's deed in Clay in August, 1875, was authorized by the law then in force, appellant, who purchased the land and received his deed in March, 1877, will be charged with the notice which the law attaches to the legal registry of a deed. If, however, such registration was not valid under the law then regulating this subject, appellant, having purchased without notice, and for a valuable consideration, has the superior title to the land. The county of Archer not having been organized in August, 1875, it becomes necessary to determine, from an examination of the laws then in force, whether it was attached to Clay county for registration purposes.

The county of Young was created on the second day of February, 1856, and at the adjourned session of the Legislature of that year (Laws 1856, p. 41) the territory, now embraced within the boundaries of Archer county, was attached to the former for judicial purposes.

The boundaries of Archer were defined and the county created by the act of January 22, 1858. (Rev. Stat., art. 712.)

On August 10, 1866, Archer, among other organized counties, was attached to Jack county for "judicial and other purposes" (Laws 1866, p. 94), and it remained so attached to Jack until August 10, 1870, when the Twelfth Legislature, in a clause of the thirteenth section of an act prescribing the terms of courts throughout the State, attached Archer with other counties to Montague county, for "judicial purposes" only. (Laws 1870, p. 53.) This section of the law of 1870 was superseded by the statute of February 10, 1874, changing the terms of the courts, and which last mentioned act omitted the clause attaching Archer to Montague. (Laws 1874, p. 53.)

In 1879, Archer, among other counties, was attached to Clay for "judicial and other purposes." The preamble to said act of 1879 (Laws 1879, p. 150) reciting that "Whereas, the unorganized counties mentioned (Archer being one) in the caption of this bill are not, by any statute now in force, attached to any organized county for judicial and other purposes; therefore," etc.

There can be no question that, by the act of August, 1866, referred to, Archer was attached to Jack county from that time until August, 1870. And if the law of 1870 repealed without

qualification that of 1866, then it follows that, from August, 1870, to February, 1874, Archer was attached to Montague for all purposes. And the act of February, 1874, having omitted the clause contained in the law of 1870 attaching Archer to Montague, then from February, 1874, until the passage of the act of 1879, Archer remained within the jurisdiction of the county out of which it had been created, and from 1879 to its organization in 1880 it was attached to Clay.

But if it be held that the law of 1866, attaching Archer to Jack for "judicial and other purposes" was repealed by the act of 1870 attaching it to Montague for "judicial purposes" to the extent that the former law attached it to Jack for "judicial purposes" only, then it would result, under the operation of the laws above mentioned, in Archer being attached by the act of 1866 to Jack from that time to August, 1870, for "judicial and other purposes," and from the latter date to February, 1874, to Montague for "judicial purposes," and to Jack for "other purposes." And the act of 1874 having omitted to attach Archer to any county for "judicial purposes," it would for such purposes be within the jurisdiction of the county out of which it had been created until the passage of the law of 1879 attaching it, among other counties, to Clay; and during this last mentioned period, from 1874 to 1879, under the operation of the law of 1866, it would be attached to Jack for "other purposes."

In either event it is obvious that, under the operation of the foregoing statutes, Archer county was not attached to Clay for any purpose in August, 1875, when the deed to appellee was recorded.

There being no law in force in 1875 authorizing the registration in Clay county of conveyances to land situated in Archer county, we are of opinion that the record of appellee's deed in the former county on the tenth of August, 1875, was not constructive notice to appellant, and we are of opinion that the judgment should be reversed and here rendered for the appellant.

*Reversed and rendered.*

Opinion adopted October 23, 1888.

STAYTON,
*Chief Justice*