## G. W. BAYLOR AND WIFE V. CHARLES HOPF AND WIFE.

### No. 7134.

1. **Parol Evidence of Trust.**—It was not error to refuse an instruction that to engraft a parol trust upon a deed the trust must be established "with clearness and certainty." It was not error to charge the jury that such trust might be proved by preponderance in testimony.

2. **Trust.**—Where a deed recites the consideration as having been paid by two parties and conveys the land to one of them, the trust in favor of the one omitted in the deed can not be treated as a trust dependent upon parol testimony.

3. **Equitable Owners.**—Parties paying the consideration in a purchase of land are equitable owners of the land purchased in proportion to the amount by each contributed to the purchase.

4. Burden of Proof.—In reply to the allegations of the petition claiming an interest in land, the title to which was in the defendant, by reason of having paid part of the purchase money, the defendant pleaded that the legal title was taken in the defendant with consent of the plaintiff, and in payment for obligations recognized by her. *Held*, while this would be a defense the burden of proving it was upon the defendant.

5. Tenants in Common — Rents. — It appearing that for part of the time for which rents were allowed the plaintiff was a member of the family of the defendant and residing upon the property owned in common, it was error in the court to require such finding and to allow rents. The defendant would only be liable after taking exclusive possession.

APPEAL from El Paso.    Tried below before Hon. T. A. Falvey.

Appellees Charles Hopf and his wife Kate Hopf brought this suit in the District Court of El Paso County October 4, 1887, and on January 9, 1889, filed their second amended petition, alleging in substance that they were husband and wife, and that the appellants (defendants below) George W. Baylor and his wife Sallie Baylor were husband and wife; that Kate Hopf and Sallie G. Baylor were sisters, their maiden names being Sydnor; that about September 7, 1882, said Kate, then unmarried, together with George W. and Sallie G. Baylor, purchased from Ward B. and Ysabel Blanchard a certain piece of real estate known as the residence of W. B. Blanchard, lying in Ysleta, El Paso County, Texas, containing 36 acres more or less—describing the property by metes and bounds—for the consideration of $1690; that of the consideration George W. and Sallie G. Baylor paid $1210, as follows: $250 in money and the balance in the following real estate: 320 acres in San Saba County, valued at $480; 320 acres in Mason County, valued at $320; 160 acres in Concho County, valued at $160.    That the balance of the purchase money was paid by said Kate in 320 acres of land lying in San Saba or Menard County, being survey 211, patented to John S. Sydnor, valued at $480, and that all these lands were conveyed to said W. B. Blanchard September 7, 1882, by a deed executed by said Baylor and wife and the said Kate; that the amount of value paid as aforesaid by said Kate, as part of the purchase consideration aforesaid, was $\frac{48}{169}$ of the whole; that when said purchase was made from said Blanchard and wife said Kate relied on and placed special confidence in said Baylor and wife to have the deed from Blanchard so made as to show her interest in the property so conveyed and vest such interest in her, but "that through mistake, inadvertence, or some cause unknown to them," and without said Kate's knowledge or consent, the deed by Blanchard and wife was made only to, and conveyed the premises to, her sister Sallie G. Baylor; that by reason of said Kate's paying $\frac{48}{169}$ of the consideration she was the equitable owner of $\frac{48}{169}$ of the said 36 acres conveyed by Blanchard and wife to said Sallie G. Baylor; that about October 1, 1882, appellants ousted said Kate, and she, joined by her

husband, sues to recover $\frac{48}{169}$ of the said 36 acres and her share of the rents and profits, and she prays for partition.

Appellants answered by general demurrer and denial, and specially, that when the purchase was made from Blanchard said Kate was a feme sole and largely indebted to appellants for board and lodging and money advanced and paid for her use during a period of ten years when she lived with appellants; that in consideration of this indebtedness, and in settlement thereof, said Kate agreed with appellants that she would convey her aforementioned 320 acres to Blanchard in part payment of the said 36 acres, Blanchard and wife to convey the latter to Sallie G. Baylor to be her separate property and homestead, and that in pursuance of this express agreement Blanchard and wife, on the date mentioned, conveyed the said property to the said Sallie G. Baylor; that said Kate fully understood all that was done, and knew that the title to the entire premises vested in Mrs. Baylor, and that she intended it to be so, free from any claims on her part; that after said Kate's marriage, to avoid a threatened suit and the bringing of family disputes into court, and to terminate all differences, though they owed said Kate nothing whatever, they agreed to pay her, and she and her husband agreed to accept, $50 in full of all demands; that appellants were now and always had been willing to pay that amount, but that appellees, in violation of their agreement, refused to accept the same.

Appellees replied by second supplemental petition, denying any settlement, and alleging that from January, 1873, until December, 1885, the said Kate had been a cook and house servant for appellants, and had never received any compensation; that appellant Geo. W. Baylor also had received some $400 belonging to her from sale of land, and that appellant owed her large sums of money when the purchase was made from Blanchard; and that it was intended and understood that the property purchased from Blanchard was for a home for herself as well as Mrs. Baylor, and that the deed would be so made.

On January 18, 1889, there was a verdict for plaintiff, and that Kate Hopf was entitled to one-fifth interest in the land in question and $180 for use and occupation, and judgment was rendered accordingly, from which Baylor and wife appealed. Plaintiff by her own testimony proved that the 320 acres belonging to her were put in as part of the purchase price of the 36 acres, and that her land was valued at $1.50 per acre in the transaction. In the deed from Blanchard and wife the consideration is stated to be $1690, paid by G. W. Baylor, Sallie G. Baylor, and Miss Kate Sydnor (now Kate Hopf)—that is, $100 cash, $100 to be paid in three months, and $50 in six months; 640 acres of land patented to John S. Sydnor, in two surveys, numbered 67 and 68, of the value of $960; 320 acres patented to Sydnor, patent No. 509, valued at $320; and 160 acres valued at $320. At the time of the con-

veyance Miss Kate Sydnor joined with Baylor and wife in a conveyance to the Blanchards of the lands above mentioned; and it was proved by decree of partition that the 320 acres survey No. 68 was allotted to her in the division of her deceased father's estate. The decree also sets apart to her other property and a 1280 acres survey in Medina County.

The deed from Blanchard and wife was to Sallie G. Baylor alone, who owned in her separate right all the lands conveyed to Blanchard except the 320 acres of Kate Sydnor.

George W. Baylor testified that Mrs. Hopf put in her land at 50 cents per acre, and all the land was so valued, and that the true consideration for the Blanchard deed was 1100 acres of land at 50 cents an acre and $250 in money. Mrs. Blanchard testified to the same facts. One Korber also testified that at the time of Blanchard's deed the 36 acres were worth only $1000 or $1200.

It was in proof in behalf of the defendant that Kate Sydnor agreed that her land should be conveyed to the Blanchards as part of consideration for their deed to the 36 acres; that she declared that it was her intention that her sister should be the sole owner of the same; that she was glad to do so, because Colonel Bâylor had been a father to her and had taken care of her for many years; also that they had supported her for a number of years, boarding and furnishing her.

In behalf of herself Mrs. Hopf testified, that there was no such understanding or intention, and that she did not know her name had been omitted as a grantee in the deed until after her marriage in 1885; that she labored for Baylor and wife, cooked and did house work, and that the value of such services was of more value than any charge they might have against her for board, etc. Baylor and wife proved by themselves and by circumstances that she only helped occasionally when they had no servant to do the work, and that they had a servant a very considerable portion of the time. They were corroborated by other witnesses as to having such servant, and by circumstances in proof by other witness that she (Mrs. Hopf) only helped occasionally. But Mrs. Hopf was also corroborated by two witnesses that while the parties lived at Ysleta she rendered the services as claimed by her.

From the number of witnesses testifying on each side it would seem defendants made the strongest case, but from numbers only, for the evidence on each side was of the same character.

Other necessary facts will be noticed in the opinion.

*Davis, Beall & Kemp,* for appellants, cited Cunio v. Burland, 1 Posey's U. C., p. 470; Markham v. Carothers, 47 Texas, 24; Neill v. Keese, 5 Texas, 23; James v. Fulcrod, 5 Texas, 512; Mead v. Randolph, 8 Texas, 191; Miller v. Thatcher, 9 Texas, 483; Hall v. Layton, 16 Texas, 274; Reeves v. Bass, 39 Texas, 633; Tied. on Real Prop., sec. 500; Perry on Trusts, 133.

*C. C. McGinnis,* for appellees, cited Tarpley v. Poage, 2 Texas, 139; Neill v. Keese, 5 Texas, 23; Burdett v. Haley, 51 Texas, 540; Neill v. Keese, 13 Texas, 187; Story's Eq. Jur., sec. 1201; Parrish v. The State, 45 Texas, 51; Beach v. The State, 3 Texas Ct. App. C. C., 381.

COLLARD, JUDGE, *Section A.*—The court instructed the jury that the burden of proof was upon the plaintiffs, and as follows: "If you believe by a *preponderance* of proof that in the purchase of the land in controversy from Ward B. Blanchard and Ysabel Blanchard, in the year 1882, a tract of 320 acres of land owned by plaintiff Kate Hopf (then Kate Sydnor) was deeded to said Ward B. and Ysabel Blanchard as a part consideration for the payment of said land in controversy; that it was agreed or understood by and between Kate Sydnor and said George Baylor and wife that said Kate Sydnor was to have an interest in said land in controversy; that said deed to said land from Ward B. and Ysabel Blanchard was made to defendant Sallie G. Baylor, and that by mistake or inadvertence the name of Kate Sydnor was omitted, then you will find a verdict for plaintiff for such interest in said land as you may believe the value of the 320 acres of land bore to the other part of the consideration paid for said land."

Appellants contend that this charge was incorrect, in that it authorized the jury to find for plaintiff on a mere "preponderance of proof," when in fact they ought to have been instructed that the trust relied on by plaintiff must be established with "clearness and certainty" to entitle her to a recovery.

Even if the object of this suit were to engraft a parol trust upon an absolute deed the charge contended for by appellants would not be correct. Justice Gaines, after reviewing our cases upon this point, in the case of Howard v. Zimpleman (unreported), says: "It is against the policy of the law that a written instrument should be shown by parol testimony to have an effect different from that which its terms import, except upon very strong proof; but we are of opinion that to tell a jury a parol trust must be proved with certainty is calculated to mislead. 'Certainty' means 'the absence of doubt,' and the effect of such an instruction is to tell the jury that it must be proved beyond any doubt. Such a quantum of proof is not required in any case." Then a rule is laid down in the opinion, which we think is both clear and safe, as follows: "In a case like the present it would be proper to instruct the jury as to the legal effect of the conveyance, and that the parties to it are presumed in the first place to have intended that it should have that effect, but that they should find that a trust was intended, provided the other evidence be sufficient to overcome that presumption and to reasonably satisfy them that such was in fact the intention."

We are not willing, however, to say that the case before us is an attempt to engraft a parol trust upon an absolute deed. The deed of

Blanchard and wife to Mrs. Baylor recites that the consideration was paid by Baylor and wife and Kate Sydnor in money and certain lands; and taking this deed in connection with the deed executed by Baylor and wife and Kate Sydnor of the same date to the Blanchards, it is evident that Kate Sydnor contributed her 320 acres of land, valued at $1.50 per acre, to the purchase. These deeds were executed at the same time and were parts of the same transaction, and as between the parties at least must be construed together. By virtue of these facts as alleged in her petition she became the equitable owner of such part of the land as was paid for by her. Burns v. Ross, 71 Texas, 519; 61 Id., 648. This right does not depend for its proof upon extraneous facts, but on the deeds themselves, is implied from them as a resulting trust, and, if the question were involved, is so clearly recognized in the Blanchard deed alone as put purchasers from Mrs. Baylor upon inquiry. It may be true, as alleged by defendants, that Kate Sydnor put her land in with the intention to make her sister the sole owner on account of obligations for support and maintenance for years as alleged by defendants. But who had the affirmative of this issue? It was set up by defendants to defeat the equity of Mrs. Hopf. She had the power to so appropriate her land or to give it to her sister if she desired, but she was not required to prove that she did not so appropriate it. The relations of the parties would not give rise to a presumption that she intended it as a gift.

The burden of proof was not upon her on this issue. There was no question made in the pleadings or the evidence but that her land was a part of the consideration for the Blanchard deed; but the question was, Was it intended as a gift or a payment to her sister or Colonel Baylor? If so, her equity was defeated.

It is true Mrs. Hopf alleged that her name was omitted in the deed through inadvertence or mistake, or some other cause to her unknown. This allegation would not require of her that strict proof that is necessary to establish a parol trust in land, because the trust is evidenced by the deed and it would be implied. If the value of her land does not appear from the deeds, the burden of proof would be upon her to show such value in order to show what part of the purchased estate would equitably belong to her; but this burden would only be such as is ordinarily assumed by plaintiff in making his case. The burden was upon her, as upon every plaintiff, to make out her case, to establish her equitable claim to the land and the amount as alleged, but not as a parol trust.

As to the assignment of error that she recovered more land than was warranted by the testimony, we must say that we can not reverse upon that ground for obvious reasons. There was evidence in the deeds when read together that her land was valued at $1.50 per acre and was esti-

mated at $480, the amount she alleged it to be worth, and she testified that such was the fact. Other testimony was to the effect that her land was only valued at 50 cents per acre, and that all the land used in the purchase was valued at only 50 cents per acre. We are not called on to reconcile the conflict in the testimony; the verdict of the jury settles that question, estimating her interest in the land at one-fifth. This is somewhat less than the interest claimed in the petition, and less than the interest that may be derived from an inspection of the deeds. If her 320 acres of land went into the purchase at $1.50 per acre, or $480, and the entire price was $1690, as stated in the Blanchard deed, and she was entitled to recover, her interest would be $\frac{48}{169}$, between one-third and one-fourth, or more properly $\frac{28}{100}$ of the whole.

The objection to the verdict that the evidence was to the effect that Mrs. Hopf voluntarily contributed her land in the purchase of the Blanchard place in order to secure a home for her sister Mrs. Baylor, or because of obligations to her, and intended at the time that Mrs. Baylor should be the sole owner, need not be further considered than to say that the evidence was conflicting, and that it is not the province of the appellate court to set aside the verdict. There was ample evidence in favor of Mrs. Hopf to establish her claim to the land as awarded by the jury, as there was to have sustained a verdict for defendants; more witnesses testifying for the defendants than for the plaintiff. In such case the verdict must stand so far as we have power over it.

The court instructed the jury substantially that if they should find for plaintiff they would also find for her the value of the use and occupation of her part of the premises from the time of plaintiff's entry. Appellants contend that the charge is erroneous, because under the facts it does not present the correct rule, and it authorized the jury to find a greater sum and for a longer period than the facts warranted. This assignment is well taken. The jury awarded $180 as rents—that is, one-fifth of $900. It was proved that the rental value of the premises was $100 per annum for the first three years of occupancy by Baylor, and $200 per annum for the rest of the time. The jury allowed rent for six years from September 7, 1882, the date of the entry and the date of the deed, to January, 1889, the time of the trial.

The evidence of Mrs. Hopf was that she aided in buying the property in order that she might have a home for herself; that she needed a home as well as her sister, and it was in proof that she did live with Baylor and wife on the place up to the time of her marriage. She says she thought her name was in the deed as a grantee until after her marriage. The jury under the direction of the court allowed her rent for the three years she occupied the premises, as well as for the three years following her marriage. The charge was not correct. It directed the jury to allow her rent for a longer time than the jury would have done, or rather might have done under the facts. If the Baylors had and

asserted the exclusive use of the property before Kate's marriage, and she was acting as a servant of the family, and not sharing in the occupancy as a tenant in common, she would be entitled to rent during the continuance of such condition of things even before her marriage. But if she occupied the premises before her marriage as a tenant in common with Baylor and wife, she could not recover rent during such time. There were facts in proof on this subject, and they should have been submitted to the jury.    . .

Because of the error in the charge, we conclude the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted October 13, 1891.